IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF TEXAS
TEXARKANA DIVISION

| | | |
|---|---|---|
| ROBERT MEAD AND CAMP GREENHEAD, LLC | § § § | |
| PLAINTIFFS | § § | |
| v. | § § | CIVIL ACTION NO. _____ |
| USI INSURANCE SERVICE, LLC | § § § | |
| DEFENDANT | § | |

# COMPLAINT

Plaintiffs Robert Mead and Camp Greenhead, LLC for their Complaint against Defendant USI Insurance Service, LLC hereby allege as follows:

## I. PARTIES, JURISDICTION AND VENUE

1. Plaintiff Robert Mead is citizen of the State of Texas residing at 3653 Maplewood Avenue, Dallas, Texas.

2. Plaintiff Camp Greenhead, LLC is a limited liability company formed in the State of Texas. Its only member is Plaintiff, Robert Mead.

3. Defendant USI Insurance Services, LLC is limited liability company formed in the State of Delaware with its principle place of business in the State of New York. Defendant USI Insurance Services, LLC's only member is USI Holdings Company, which is a Delaware Corporation with its principle place of business in the State of New York.

4. This Court has subject-matter jurisdiction pursuant to 28 U.S.C. sec. 1332 because the citizenship of the parties is diverse and, as set forth below, the amount in controversy exceeds $75,000 exclusive of costs and interest.

5. Venue is proper in this Court pursuant to 28 U.S.C. sec. 1391.

6. This Court has personal jurisdiction over Defendant based on its contacts with Plaintiffs in the State of Texas.

## II.  FACTUAL BACKGROUND

7. Plaintiff Robert Mead is a Dallas businessman who founded a company eventually known as Silverleaf Resorts, Inc.  Defendant insured Silverlearf Resorts for many years before it was sold by Mead.  In addition, Defendant has insured Mead's personal residence in Dallas, Texas for many years.

8. Plaintiff Mead is an avid outdoorsman and hunter.  Mead has been a member of Little Sandy Hunting and Fishing Club (hereinafter "Little Sandy") located outside Hawkins, Texas since 1979.  Mead's membership in Little Sandy also included a cabin built in 1947 and a boathouse.

9. Prior to September of 2015, Mead was the owner of approximately 1,700 acres of property approximately 10 miles Northeast of Little Sandy, which has been referred to as "the Wilderness Property". Plaintiff, Camp Greenhead, LLC, was formed to hold the assets of this property.  Mead developed this property into a blue ribbon waterfowl hunting property, complete with a lodge and 2 cabins, various barns and numerous moist soil units for waterfowl hunting.

10.  At all times relevant to this lawsuit and for at least 15 years, Defendant insured Mead's cabin, personal affects and boathouse at Little Sandy.  Also, from the

time of the purchase of the Wilderness Property, Defendant has insured said property, structures and personal affects held by Plaintiff Camp Greenhead, LLC.  Coverage for both the Little Sandy cabin, affects and boathouse and the property, structures and affects of the Wilderness Property were combined into one policy shortly after the development of said property.  The Wilderness Property was designated as "Location 1" and the cabin and boathouse at Little Sandy was designated as "Location 2".

11.  Prior to 2015, the agent for Defendant handling Mead's insurance policies was Mr. Jess Alonso.  Mr. Alonso left Defendant's employ and was replaced by Ms. Brenda Terrio.

12.  In September of 2015, Mead sold approximately 1,100 acres of the Wilderness Property to a third party.  Said sale included the lodge and two cabins.

13.  As a result of the sale of the majority of the Wilderness Property in September of 2015, Mead instructed his assistant, Ms. Sandy Cearley, to contact Terrio, advise her of the sale and request that the insurance policy be adjusted to remove the sold property and insured structures.  On September 20, 2015, Cearley initiated contact via email with Terrio and made the aforementioned request.  Nowhere in this initial email is the cabin at Little Sandy mentioned.

14.  Between September 21, 2015 and November 11, 2015, Cearley and Terrio corresponded on numerous occasions about the requested change to the insurance policy in question.  At every turn, Cearley made it clear to Terrio that the coverage for the Little Sandy property should not be deleted from the policy.  Specifically, on September 23, 2015, in response to Terrio's inquiry, Cearley states that she wants to make sure the house at Little Sandy is not one of the structures listed on a previous email as one being

deleted.  She specifically says "I do not want to delete this house."  Also, on November 11, 2015, in another response to Terrio's inquiries, Cearley provides maps of the Wilderness Property that was sold and that which was retained.  She specifically states "this does not include the house at Little Sandy which is located on an entirely different property."

15.  On November 23, 2015, an application for farm and ranch insurance for Camp Greenhead, the Wilderness Property, was received and signed by Mead on November 29, 2015.  There is no mention of a deletion of the Little Sandy property on said application.

16.  On December 11, 2015, a policy for insurance issued covering all dwellings at both Location 1 and Location 2.  Premiums were paid pursuant to this policy.

17.  On or about February 18, 2016, Cearley contacts Terrio regarding Mead's complaint that the insurance premiums for the policy in question had not been reduced as a result of the requested deletions for the Wilderness Property.  Follow up inquiries and complaints continued through mid-April of 2016.

18.  On April 19, 2015, Terrio sends an email to Mead indicating her frustration with the process and advising that she had contacted the underwriter again and would contact her supervisor if she didn't receive a prompt response.

19.  On April 29, 2015, a tornado ripped through Little Sandy.  As a result of the uprooting of trees and high winds associated with the tornado, Mead's cabin and boathouse at Little Sandy were structurally damaged beyond repair and many personal affects were destroyed and lost.  On or about May 2, 2016, Cearley advised Terrio of the loss at Little Sandy and made his claim for coverage.  The coverage amounts contained in

the December 11, 2015, policy for the Little Sandy property were $120,000.00 for the cabin, $12,030 for other structures such as the boathouse, $57,800.00 for household personal property and $24,060.00 for loss of use.

20.  Also on May 2, 2015, over 7 months after the policy changes were requested by Mead and the same day she is notified of the damage to the Little Sandy property, Terrio emails Mead that she hopes to have information back from the underwriter about the policy changes that day.

21.  The next day, May 3, 2015, Terrio emails Mead that she " was able to go to a manager at the company and have them push through the request to have the farm policy updated…. The company agreed to **back date** our request due to the signed application that was submitted in November." (emphasis added)  Terrio then goes on to reference the Little Sandy damage and her position that the property there was not covered due to Mead's mistake.  Until this email, Mead has no indication that Defendant took any type of position that said property was not covered by the December 11, 2015 policy.

22.  On June 28, 2016, Mead received a reservation of rights letter from Ms. Melanie Wolski regarding Fireman Fund's position that the property at Little Sandy was not covered by the December 11, 2015 policy and enclosing for the first time the "back dated" endorsement referred to by Terrio on May 3, 2016.  Said endorsement for the first time deletes the property at Little Sandy and is dated April 19, 2016.

23.  Although a proper notification of the damage and demand for coverage has been made, Defendant has refused to honor its obligation to cover the claim.

## COUNT 1

## BREACH OF CONTRACT

24. Plaintiffs reallege and incorporate by reference all the allegations contained in the previous paragraphs as if fully set forth herein.

25. The December 11, 2015, insurance policy transmitted by Defendant to Plaintiffs is valid and enforceable contract between the parties.

26. Plaintiffs have performed their obligations under the contract, namely paying consideration for insurance coverage in the form of premiums.

27. Defendant has failed to perform its obligations pursuant to the contract as set forth above constituting a breach of said contract.

28. Defendant further breached said contract by improperly "back dating" the endorsement transmitted to Plaintiffs on June 28, 2016, as set forth above.

29. As a result of Defendant's breach, Plaintiffs have been damaged as set forth above and in an amount to be determined by jury at trial.

## COUNT 2

## VIOLATION OF CHAPTER 541 OF THE TEXAS INSURANCE CODE

30. Plaintiffs reallege and incorporate by reference all the allegations contained in the previous paragraphs as if fully set forth herein.

31. Plaintiffs are "persons" for purposes of this claim as defined by the Texas Insurance Code as they are party insureds and beneficiaries under the policy in question.

32. The aforementioned December 11, 2015, policy for insurance covers the claim of Plaintiffs referenced herein.

33. Based on the aforementioned allegations, Defendant's liability is reasonably clear.

34. Plaintiffs have made a proper demand within policy limits.

35. The terms of Plaintiffs' demand are such that an ordinarily prudent insurer would accept it.

36. Defendant has misrepresented material facts relating to the policy coverage as alleged herein, specifically but not limited to, "back dating" the endorsement that deleted the Little Sandy property when it was made clear that such a deletion should not take place.  Such conduct constitutes a misrepresentation of a material fact affirmatively made by Defendant in violation of section 541.060 of the Texas Insurance Code.

37. The aforementioned violations were knowingly committed by Defendant and have caused Plaintiff Mead mental anguish entitling him to enhanced damages as provided for in section 541.152(b) of the Texas Insurance Code.

38. All prerequisites and notices required by the Texas Insurance Code have been satisfied and provided.

## COUNT 3

**BREACH OF COMMON LAW DUTY OF GOOD FAITH AND FAIR DEALING**

39. Plaintiffs reallege and incorporate by reference all the allegations contained in the previous paragraphs as if fully set forth herein.

40. Based on the allegations contained herein, Defendant has acted in bad faith as related to the claim for insurance coverage made by Plaintiffs.

41. Defendant's liability to perform its contractual obligations as set forth in the December 11, 2015, policy for insurance was reasonably clear at the time Plaintiffs' claim was made.

42. Defendant, at the time of its breach of duty of good faith and fair dealing, knew or by exercise of reasonable diligence should have known that its liability was reasonably clear.

43. As a result of Defendant's bad faith, Plaintiff Mead has experienced mental anguish and is entitled to damages.

44. Based on Plaintiff Mead's actual damages beyond the policy benefits, he is entitled to an award of exemplary damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that this Court enter judgment against Defendant awarding actual and exemplary damages in an amount greater than that required for federal diversity jurisdiction, to be determined at trial by jury, together with its costs, attorneys' fees, and all other proper relief to which it is entitled.

December 6, 2016                                    Respectfully submitted,

By:/s/ Lance Lee

Lance Lee
5511 Plaza Drive
Texarkana, TX  75503
Tel: (903) 223-0276
Texas Bar No. 24004762